STREYER *v.* GEORGIA SOUTHERN & FLORIDA RAILROAD CO.

1. Under a statute which authorizes a railroad company to construct its road in a public street, but not until the payment by it of all damages which will be occasioned thereby to the property of any person, and which allows either the company or the property-owner to commence proceedings to have the damages assessed, the company, on the trial of an appeal entered by it from the assessment made in a proceeding commenced by it, is entitled to open and conclude, the burden of proof being upon it to show either that the property in question was not damaged, or if it was, the amount which would compensate the owner and which must be paid or tendered by the company before constructing its road in the street on the terms prescribed by the statute. See Belling·ham Co. *v.* Strand (Wash.), 30 Pac. Rep. 144.

2. The damage to contiguous property resulting from the construction of the railroad in a public street which the act of December 17, 1888 (Acts of 1888, p. 139), contemplates, is such damage as must be compensated for by reason of that provision of the constitution which declares that "Private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid." The ultimate and only measure of such damage is the diminished market value of the property. Market value for this or that particular use, and change in the same by reason of locating the railroad in the street, are irrelevant save as evidence tending to show general market value, that is, value in the open market without respect to any particular use. Diminished rental value for any purpose is no basis for compensation except as to its result, if any, on the general value.

3. In determining the question of damages and assessing the amount, the physical property (land and buildings) and the easement of access thereto from the street are not to be considered as having separate values, as if they were two different parcels of property, but are to be treated as parts of one and the same estate. Whether damage has been or will be done by the construction and use of the railroad, depends upon whether the market value of the whole estate as one object of ownership has been or will be diminished by reason of devoting the street to this new use.

4. The court committed no material error in admitting or rejecting evidence, or in charging or refusing to charge the jury. The verdict was correct, and there was no error in denying a new trial.

August 1, 1892. *Judgment affirmed.*

Railroads. Damages. Evidence. *Onus.* Argument. Before Judge MILLER. Bibb superior court. November adjourned term, 1890.

A special jury summoned by the sheriff to assess the damages to property of Streyer, caused by the contruction and operation of the railroad along Fifth or Elbert street in Macon, found for Streyer $1,000. The railroad company appealed to the superior court, and in that court the verdict was that the property would not be damaged. Streyer moved for a new trial; the motion was overruled, and he excepted. The motion contained the general grounds that the verdict was contrary to law, evidence, etc., and the following special grounds:

The court refused to allow counsel for Streyer the opening and conclusion, which was asked for the reason that though the railroad company was nominally plaintiff, its position was purely negative—simply denying that there was any damage, while the whole burden of proof was in fact upon Streyer, who was obliged to prove not only the damage but the amount of the same.

Error in permitting, over objection, the appellant to ask its witness Elkin, and him to answer the question, "What was the condition of Fifth street before the railroad was put down?" unless he would confine himself to that portion of the street in front of or in the vicinity of Streyer's property; the same being immaterial and liable to mislead the jury, for the reason that any improvement put upon the street a mile or so away from Streyer's property, as appears from the evidence, could have no effect upon the value or the damage to his property And in permitting, over objection, one of the witnesses for the appellant to answer the question,

"How much more would you give for the Streyer prop-
erty now than you would before the railroad came
there?" and him to answer, "Twice as much"; because
the same was irrelevant, calculated to mislead the jury
and deceptive, as the witness might not have been will-
ing to have given $5 for the property before the road
came there, may not have wanted it at all, or been able
to give anything for it; while now he might be willing
to give $10, or something for the property.  And in per-
mitting, over objection, witnesses for appellant to testify
that there were many instances where dwelling-houses
in Macon were built right up to the right of way of the
Macon & Western railroad; the same being immaterial
and calculated to mislead the jury, because a railroad on
its own right of way is one thing, and a railroad in the
streets of a city another; and because it would make a
great difference whether a railroad was put down in the
street after dwellings had been erected, or whether
dwellings were erected on a right of way of a railroad
voluntarily, when the railroad was already there.

Error in refusing to permit witnesses for Streyer to
answer the question, "Tell the jury why you left there?"
referring to their leaving the dwelling-houses on that
street, owned by other parties than Streyer; because the
same was material to the issue, and was asked to show
that the construction of the railroad along the street in
question had actually driven tenants from houses occu-
pied by them all along said street.  And in refusing
to permit these witnesses to answer the question, "After
the road is constructed and operated along that street,
would you continue to reside on that property?" refer-
ring to the property they did occupy on that street
before the railroad came along there, and which is owned
by other parties than Streyer; because the same was
material to the issue and was asked to show the jury
that people who had been occupying dwellings on the

street would live there no longer after the railroad was constructed along it, and that consequently dwellings on that street would be necessarily damaged, as they would not be in demand by respectable tenants as before. And in refusing to permit a witness for Streyer to answer the question, "Whether he knew of other people that were driven away from their residences on Fifth street by the construction of that road" (the court saying they would be the best witnesses); because the answer would be material, and was asked for the purpose of showing that there had been a number of people who vacated their residences along said street as soon as the railroad was constructed there, and that consequently residence property, generally, abutting on the street was injured from the cause. And in not permitting a witness for Streyer to answer the question, "Has there been any offer of anything to you for your property?"; the same being very material to the issue, this witness owning property next to Streyer's, and improved in like manner; the purpose of the question being to show that the theory of the railroad company was not true, and that there had been no increase in the value of the property situated in the vicinity of Streyer's and improved in like manner, nor any demand for the same for manufacturing purposes, caused by the construction of this road on said street. And in not permitting Streyer's agent to collect his rents and attend to said property, to testify to the declarations and complaints made to him at the time by the tenants in Streyer's houses, when they vacated the same; said declarations being material as showing directly what damage the construction of this railroad in the street in front of Streyer's property had already inflicted upon it, and the cause of their leaving it.

Error in refusing to charge: " I charge you that under the wording of the constitution of the State and of this

special act under which the railroad is proceeding, it must first pay Streyer the value of any property belonging to him, which it may appropriate to its use, and also the actual and direct damages which would be inflicted upon the property which would of necessity flow from this taking, or the construction of the road in the street and front of his property.

"I charge you that there exists in the owners of abutting lots a private right to have free access to their lands and buildings as the same was and would have continued to be according to the mode of its original use and appropriation by the public, and there can be no change of such mode and adaptation of the street to new vehicles and methods of carriage and transportation, which will materially impair or destroy such right, unless by consent of the owners upon payment of due compensation to them.

"I charge you that the owner of property abutting upon a street has certain rights in said street which attach to his property, and are known in law as an easement. This easement is property in constitutional intent, and is subject to taking just as the land itself, and when this easement is interfered with, in whole or in part, the party interfering must pay for the damage done the same.

"I charge you that a regular steam railroad in the street, over which freight and passengers are hauled in trains, is an extra burden on the street, and is a taking in contemplation of law of the abutting property-owner's easement in the same, the value of the same being proportional to the amount of the easement taken or destroyed.

"You will first find out from the evidence the value of the portion of the easement destroyed or taken in the construction of the road; then you will further inquire how much damage will be inflicted upon the

abutting property by reason of taking of part of the easement and the uses to which the part taken will be put.    You cannot set off any benefits against the value of the property taken.

"I charge you that in considering the evidence submitted to you, if you cannot reconcile the same, you must believe that which is positive and direct in preference to that which is only conjectural, or based on a mere speculative opinion.

" As you cannot find damages for speculative or possible injuries to this property, so you cannot set off, against the actual damage which will be inflicted on Streyer's property by reason of the construction of this railroad in the street, as shown by the evidence, benefits which might possibly accrue to his property from the said cause.    Speculative inquiries as to what might possibly happen to his property are excluded, and the only benefits you can set off against the proven damage are such as appear from the evidence to be direct, positive, proximate and certain to follow; not such as are only possible, contingent, speculative, or which depend entirely upon the will of outside parties." On this point the court did charge thus:  " Now, in considering that question, you are not to consider any speculative damages or benefits either way; you are to take the testimony as reasonable men, and not take into account any speculative or imaginary damage that might result to this property, and at the same time you are not to consider any possible, speculative or imaginary increase in value; you are to take the reasonable, natural result that will flow from the railroad coming there, both as to increasing and diminishing the value of Streyer's property."    It is assigned as error that the charge as given was not as full and emphatic as the charge requested, and as it should have been, considering the peculiar character of the issue on trial and the un-

certain character of the evidence; and because the charge as given only warned the jury against speculative benefits in a light way, and not against possible and contingent benefits, and benefits which depended entirely upon the will of outside parties, which benefits should not be considered, and the omission to charge regarding them was calculated to mislead the jury.

The court charged that "The measure of damages would be the depreciation of its market value." Assigned as error, because, under the special act of December 17, 1888, the measure of damages would be the actual damages which would be inflicted upon the property by reason of the construction of the railroad in the street; and the charge was liable to mislead the jury, insomuch as the market value of the property might and would naturally have actually increased by reason of the natural growth and general increase in values, and from causes other than the railroad in the street, and still the railroad would be liable for the damages it inflicted upon Streyer's property by reason of being in the street.

The court charged: "If you find there was damage, in order for you to ascertain how much, you would first determine under the testimony what its original market value was before the railroad attempted to come there, and then ascertain whether or not that market value has been decreased by reason of the railroad coming there, and the amount of that decrease would be the proper amount of your verdict." Assigned as error, because the original market value had nothing to do with the issue on trial, and the charge was calculated to mislead the jury and deprive the property-owner of the natural increase in the value of his property, past, present and future, and any increase which would come from other causes than the railroad in the street; and because the true measure of damages would be the difference between

the value of the property with the railroad in the street and without it, the special act requiring the railroad to pay all damages which would of necessity flow to the property after the construction of the railroad in the street.

The court charged: "If you believe from the evidence that it [referring to the running of trains on the street, with the noise, smoke, dust, etc.] amounts simply to an inconvenience to the occupants, for instance, if you or I were living there we would rather not have simply a disagreeable annoyance, that is not damage; that is not a thing that you could treat as damage for which a money value could be given." Error, because incomplete and calculated to mislead the jury; and because the court did not charge further, that if these things, which would only be an annoyance to those occupying the houses, would nevertheless cause them to leave the same in order to escape the annoyance, and that by this means Streyer would lose good tenants and the rental value of his property be diminished from this cause, the railroad would be liable for the damage.

The court charged: "Now it may be true you may find from the evidence that, in point of fact, the coming of the railroad will decrease the value of this property for rental purposes; but upon that alone you could not base a verdict for Streyer, unless you were satisfied from the testimony that the effect at the same time would be to decrease its market value." Error, because Streyer was entitled, under the act of December 17, 1888, to all damages which would be inflicted upon his property as it then stood, houses and land together, by reason of the construction of the railroad in the street.

The court charged: "The issue you are to try is not whether his property has been damaged for any given purpose, but whether its selling value, its market value, has been decreased by reason of this railroad coming

there." Error, in that the act mentioned gave Streyer damages which might be inflicted upon his property by reason of the construction of the railroad in the street, his property to be considered as it was when the railroad came down the street, houses and land and the purposes for which they were used being considered together.

The court charged: "If you find the property had been decreased for its rental value, for instance $500, and you find on the other hand its selling value, its market value, had been increased $500, the one would set off against the other, and of course you would find that the man hadn't been damaged if he could sell and get the same price for his property, although you might believe under the evidence its value for renting had been decreased $500. If you find again, that its rental value had been decreased $500 or $1,000, and that its market value had been increased $2,000 or $1,500, some amount over and above, you would still, of course, have to find he hadn't been damaged." This charge absolutely takes away from Streyer any increased value which had or would come to his property by reason of natural growth and increase in the value of city property generally, or which would accrue to it from reasons other than the construction of the railroad in the street; the charge assuming that the value of the property would be either increased or diminished by the railroad in the street, when there could be many distinct causes other than this which would or might increase the value of the property and which Streyer would be entitled to enjoy the benefit of, and for which the railroad would be legally liable if they diminished or interfered with the same.

The court charged: "In order to find for Streyer, you must find that the effect of the railroad coming there has been to reduce the original selling price of the property." Error, in that the original selling price had

nothing to do with the issue, it being simply a question whether the construction of the railroad in the street would occasion damage; again, consideration of the original selling price was calculated to mislead the jury and keep them from considering natural increase in value, or increase from causes other than the railroad in the street, which increase, if the railroad in the street interfered with, it was liable for.

The court erred in the charge as a whole, in that it nowhere submitted Streyer's theory, as brought out by testimony and urged in argument, that he was entitled to all enhancement in the value of his property, arising from natural growth of the city or causes other than the railroad in the street; it failed to warn the jury that enhancements in value arising from such causes could not be set off against actual proved damage; it did not charge that the benefits which could be set off against the actual proved damages could only be such benefits as the evidence showed would spring alone from improvements placed upon the street in front of or in the vicinity of Streyer's property; it continually referred to benefits which the jury, from the evidence, might set off against the proved damage, no benefits being mentioned in the special act of December 17, 1888, not authorized by the evidence; it continually referred to the market value of the property, without defining what market value was meant, whether of the land itself or of the property considered as a whole, houses and land together, and for the purposes for which it was then used; it repeatedly assumed that any benefits arising from the construction of the railroad in the street could be set off against the proved damages, whereas in law no benefits could be set off against such damages except such as would flow directly from improvements placed upon the street itself, the mere construction of the railroad itself being no improvement put on the street, even if the
v 90-5

special act authorized the setting off of any benefits at all. And the court in its charge continually referred to the market value of the property, and distinctly told the jury that by market value it did not mean rental value, or the value of the property for rental purposes; Streyer contending that if market value were to be considered, it should be market value for the purposes for which the property had been dedicated and improved, and it would be especially lessened by a railroad in the street, and that the measure of damages for a railroad in the streets of a city in front of residence property, was a distinct legal principle, *sui generis*, and confined to the actual damage done the property as it then stood, and for the purposes the property was used, and if market value were considered, it should be the market value for the purposes for which the property had been improved and was used, the market value for residence purposes.

HARDEMAN & NOTTINGHAM, for plaintiff in error.

GUSTIN, GUERRY & HALL, *contra*.