51448. TAYLOR v. GEORGIA POWER COMPANY.

DEEN, Presiding Judge.

Taylor owned land one side of which was contiguous to a railroad right of way. Georgia Power Company

initiated a proceeding to condemn an easement for a telephone line parallel to the railroad tracks. A three-assessor award valued the condemnee's actual and consequential damages at $51,010, based primarily on his position that the easement in large part destroyed the value of the condemnee's remaining land by denying it access to the railroad. The condemnor then appealed to the Superior Court of Spalding County and, prior to trial, amended its original notice of condemnation by placing the duty on the condemnor, at its own expense, to move and relocate any poles or lines which might in the future be necessary to allow the construction of a railroad spur or side track onto the remaining property. The allowance of the amendment was held in *Taylor v. Ga. Power Co.*, 129 Ga. App. 89 (198 SE2d 701) not to be objectionable as a dismissal of a part of the interest sought, but its effect was only "to limit the condemnor's use of the land condemned" and an amendment is proper "where its allowance does not adversely and substantially affect the condemnee's rights."

The condemnee then sought to amend his petition by adding a defense to the effect that he had sought such a limitation of interest in the first instance; that the condemnor had refused to grant it unless he accepted the condemnor's valuation of the property, and that this action plus the present amendment, after he had been put to great trouble and expense to defend against the unrestricted easement, was in bad faith and entitled him to attorney fees. This defense was stricken, and, after verdict and judgment, is enumerated as error. *Held:*

1. The fact that the unrestricted easement plus consequential damages was valued by three assessors at $51,010 whereas the restricted easement was valued by the jury at $3,000 plus no consequential damages is very good evidence that, in spite of our former decision, the effect of the condemnor's amendment restricting the purposes of its easement did indeed substantially affect the relative rights of the parties. Additionally, the circumstances set out in the stricken defense are amply sufficient to raise a jury issue as to bad faith on the part of the condemnor.

Nevertheless, as an intermediate appellate court

bound by the decisions of the Supreme Court, we have no option but to affirm. It has been held since *Streyer v. Georgia S. & F. R. Co.,* 90 Ga. 56 (1) (15 SE 637) that the burden of proof is on the condemnor to show damages, with a correlative right to open and conclude the argument. The effect of this is to make it a plaintiff and the condemnee a defendant. *Ga. Power Co. v. Brooks,* 207 Ga. 406 (4), 411 (62 SE2d 183); *State Hwy. Bd. of Ga. v. Shierling,* 51 Ga. App. 935 (3) (181 SE 885).

If the condemnee is in fact a defendant, then he is precluded from obtaining attorney fees under the provisions of Code § 20-1404 which applies only to *plaintiffs* where the *defendant* is in bad faith. "A defendant cannot avail himself of the provisions of Code § 20-1404, which provides as follows: 'The expenses of litigation are not generally allowed as a part of the damages; but if the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.' " *King v. Pate,* 215 Ga. 593, 596 (112 SE2d 589). In view of these Supreme Court decisions we are unable to hold, as we otherwise would, that the condemnee has alleged a case for jury submission on the bad faith-attorney fee issue.

The case of *Pickett v. Ga., F. & A. R. Co.,* 98 Ga. App. 709 (106 SE2d 285) on which the appellant relies is technically not applicable because there the condemnee was the plaintiff in an injunction action, although this decision and the Supreme Court decision in 214 Ga. 263 transferring the bad faith-attorney fee issue to this court after the condemnor sought to dismiss (thus rendering everything in the injunction action except attorney fees moot) does establish that where the condemnee can leap the *versus* barrier he may in a proper case, where the condemnor has proceeded in bad faith, recover his expenses of litigation. But even in *Pickett* the attorney fees sought were for prosecuting the injunction suit, not for defending against the eminent domain action.

2. The requested instructions which the judge failed to give to the jury were inapplicable after the issue of access to the railroad had been eliminated. No reversible error appears.

*Judgment affirmed. Evans, J., concurs specially. Stolz, J., concurs in the judgment only.*

ARGUED OCTOBER 30, 1975 — DECIDED NOVEMBER 26, 1975 — REHEARING DENIED DECEMBER 11, 1975 —

*Seay & Sims, Marshall R. Sims,* for appellant.
*Beck, Goddard, Owen & Murray, J. C. Owen, Jr., Samuel A. Murray,* for appellee.

EVANS, Judge, concurring specially.
I concur in the judgment, but feel it proper to add this special concurrence:

1. Where the right of eminent domain is exercised, who has the burden of proof and the right to open and close the argument to the jury?

2. Where the right of eminent domain is exercised, in addition to the value of the property taken by the condemnor, has the condemnee the right to attorney fees?

3. The federal government and the state government are granted the right to take the property of a private citizen, but not until just and adequate compensation has first been paid. See Code Ann. § 2-301; *Bowers v. Fulton County,* 221 Ga. 731, 758 (146 SE2d 884). The theory is that the individual must suffer where it is shown that the public weal and the citizenry as a whole will benefit from taking away his property, no matter how loath he may be to give it up.

4. This right of eminent domain has been developed and expanded, and on the theory that certain persons or corporations exist principally for the benefit of the public (a myth in many respects). Railroads and other public utilities are also allowed to take the citizen's property away from him, no matter how much to his disliking. And just as the state and national government must do, they are required to first show they have paid (or tendered) to the citizen *just and adequate compensation* for his property.

5. In such cases, who has the burden of proof? This is important, because the litigant who has that burden is

allowed the privilege of opening and closing the arguments to the jury. See *Harrison v. Young,* 9 Ga. 359 (1); *McKibbon v. Folds,* 38 Ga. 235 (1); *Abel v. Jarratt & Co.,* 100 Ga. 732 (28 SE 453). There should be no hard and fixed rule on this subject, but each "tub should sit on its own bottom." If the condemnor seeks to condemn land and the landowner interposes the objection *that the condemnor has not the right to condemn,* then of course the burden is on the condemnor, with the attendant right of opening and concluding the arguments. Such cases may arise when a roadway or other right of easement is sought which the condemnor does not actually need — or perhaps can secure by using other of its own property.

6. But if it is admitted that condemnor has the right to condemn, and the principal issue is the value of the property that is sought to be taken away from the condemnee, then the condemnee has the burden and most certainly should have the right to open and conclude. I repeat that there should not be a hard and fast rule that the condemnor has the burden in every case, because that simply is not true. In every case at law how much does the defendant have to admit before he gains the burden of proof? When he admits that the condemnor has the right to condemn his property, isn't that enough to satisfy the requirement of admitting a prima facie case? I say it is.

7. And, most important, is the condemnee entitled to attorney fees irrespective of whether the condemnor has acted in bad faith? The Constitution of the United States and the Constitution of Georgia are supposed to protect the citizen in the ownership of his property. Code Ann. §§ 1-805, 1-815, 2-102, 2-103, 2-113, 2-301.

8. Finally, both Constitutions plainly provide that private property shall not be taken for public use without just and adequate compensation being first paid before eminent domain is used. Code Ann § 2-301 clearly states: "Private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid. . ."

9. Let us suppose that A has a piece of property that he does not want to sell, and which is of the value of $50,000. Condemnation is instituted and he places ten witnesses on the stand who testify that they know the

value of property in this vicinity and that the particular property is worth $50,000. But the condemnor has only offered him $7,000 for the property, and the landowner is required to employ counsel to try the case. Let us suppose he receives verdict and judgment for $50,000. But he is not allowed to keep the entire $50,000 because he has to give 20% of it to his able attorney, without whose services he may not have gotten more than $7,000. When he pays $10,000 to his attorney he is left with $40,000, and "just and adequate compensation" has not been paid to him and the Constitution has been trampled under-foot. But the condemnor says we paid *you and your lawyer* the whole $50,000. The lawyer didn't own the property or any part of it. Is this abiding by the Constitution, when a citizen is made to give up part of his property in order to be paid the true value of same, and in order to receive "just and adequate compensation" for his property?

10. We are quite familiar with *Bowers v. Fulton County,* 227 Ga. 814 (183 SE2d 347), wherein the Supreme Court of Georgia has held that attorney fees are not collectible in such cases; and we are familiar with *Streyer v. Ga. S. & F. R. Co.,* 90 Ga. 56 (1) (15 SE 637) and *Ga. Power Co. v. Brooks,* 207 Ga. 406 (4), 411 (62 SE2d 183), wherein the Supreme Court has held that the burden of proof and right to open and conclude belongs to the condemnor and not to the condemnee.

But we are not bound by those decisions. No decision that *defeats justice* is binding on us. That was made quite clear on the 22nd day of June, 1975, when the Supreme Court of Georgia spelled it out in language that cannot be misunderstood, and speaking through Justice Hill, in *Hall v. Hopper,* 234 Ga. 625 (216 SE2d 839), pp. 631, 632, held as follows: "Stability and certainty in law are desirable; stare decisis is a valid and compelling basis of argument. *Cobb v. State,* 187 Ga. 448, 452 (200 SE 796). It is not possible, however, to achieve unanimity in every case which reaches this court. When a majority of this court determines that stability must give way to justice to the prisoner, then justice prevails. The 'full bench rule' has been repealed."

11. If the *oldest unreversed full-bench decision* is not binding on the Supreme Court of Georgia, it is not binding

on the Court of Appeals of Georgia. If the principle of *stare decisis* (being bound by the earliest precedents) is not binding on the Supreme Court of Georgia, it is not binding on the Court of Appeals of Georgia. If the Supreme Court of Georgia can disregard any earlier authority that stands in the way of rendering *justice,* then the Court of Appeals can disregard any such earlier authority, just as the Supreme Court can and does. We love justice just as much as does the Supreme Court and we have the same right to reach justice by the same paths that are traveled by the Supreme Court in reaching justice, and by using the same rules laid down by the Supreme Court for such high and noble purposes.