59988, 59990. BALLENGER CORPORATION et al. v. DRESCO MECHANICAL CONTRACTORS, INC. et al. (two cases).
59989, 60024. JONES & FELLERS ARCHITECTS, ENGINEERS & PLANNERS, INC. v. BALLENGER CORPORATION et al. (two cases).
60107, 60170. DRESCO MECHANICAL CONTRACTORS, INC. et al. v. BALLENGER CORPORATION et al. (two cases).

DEEN, Chief Judge.

This opinion results from no fewer than six appeals and cross-appeals following a five-month trial on Phase I of an action severed for trial in three phases. The record below is voluminous, the transcript of trial proceedings consisting of more than 14,000 pages. The facts salient to these appeals are as follows:

I. *Statement of Facts.*

The actions below arose from the construction of a large hospital complex at Rome, Georgia, known as Project No. GBA (H) — 7, Northwest Georgia Regional Hospital (hereinafter referred to as the "Project"). The Project was constructed for and is owned by the Georgia Building Authority (Hospital) (hereinafter "Building Authority") and was publicly bid in late 1970. The contract was awarded to Ranger Construction Co. which became general contractor for the Project, The Travelers Indemnity Co. (hereinafter "Travelers") providing the necessary performance and payment bonds. Subsequently, the name of Ranger Construction Co. was changed to Ballenger Corp. (hereinafter "Ballenger"). Jones & Fellers — Architects, Engineers & Planners, Inc. (hereinafter "Jones & Fellers") acted as supervising architects for the Project per an agreement entered with the Building Authority. On March 15, 1971, Ballenger entered into a subcontract with Dresco Mechanical Contractors, Inc. (hereinafter "Dresco") for construction of the mechanical and utility portions of the Project. United States Fidelity & Guaranty Co. (hereinafter "USF&G") provided the performance and payment bonds on the subcontract.

The Project was a large health care facility consisting of seventeen buildings to be completed in two phases. Construction began in March of 1971 and was originally to be completed within 900 days, that period later extended for an additional 865 days. Early in the performance period, the Project became fraught with a number of problems, including the improper functioning of the steam distribution and chill water systems running between all buildings and difficulties with the insulation of heating and air conditioning ducts, which work was performed pursuant to the sub-contract between Dresco and Ballenger. Numerous disputes arose between

the parties. These disputes generally followed the following course: Jones & Fellers would inspect Dresco's work and issue condemnations requiring Dresco to correct the work. Dresco would frequently protest the condemnations, and the Building Authority would investigate and determine the required level of performance. On many condemnations, corrective work was ordered. On some such occasions, Dresco performed the additional work; on others, Dresco refused further performance, and Ballenger was required to correct the designated problems. These four-way disputes, between Jones & Fellers, Dresco, Ballenger and the Building Authority became quite common with Dresco generally contending that Jones & Fellers provided deficient plans and specifications and that Ballenger had impeded Dresco's performance and with Jones & Fellers and Ballenger contending that Dresco's performance was defective.

On August 2, 1974, Ballenger (then Ranger Construction Co.) filed suit against Dresco and its surety, USF&G, for breach of contract seeking recovery of $1,590,936.07 damages plus interest, costs and attorney fees. On November 11, 1974, Dresco answered generally denying any recovery under the subcontract and filed a counterclaim against Ballenger, Travelers and Jones & Fellers. The counterclaim consisted of four counts alleging (i) bad faith and breach of contract by Ballenger and Travelers in withholding certain payments due Dresco for work performed and in withholding and concealing a reduction in retainage payment from the owner, (ii) negligence of Ballenger and Travelers in the direction and supervision of Dresco and negligent inspection and preparation of plans and specifications by Jones & Fellers, and (iii) recovery in *quantum meruit* against Ballenger and Travelers for work performed. Ballenger and Travelers and Jones & Fellers filed answers to the counterclaim generally denying any liability to Dresco.

Subsequently, Ballenger and Travelers filed cross-claims against Jones & Fellers alleging negligent performance by Jones & Fellers of its design and supervision duties and seeking recovery over against Jones & Fellers for any liability of Ballenger or Travelers in favor of Dresco. Jones & Fellers in turn filed claims against Ballenger (for negligent supervision and coordination of construction), against Travelers (for recovery over on its cross-claim against Ballenger), and against Dresco (for negligent construction).

On December 2, 1977, Dresco amended its counterclaim of November 11, 1974 to add Count V alleging further negligence by Jones & Fellers. On December 21, 1977, Dresco again amended its counterclaim adding Count VI alleging certain intentional acts of bad faith by Ballenger and Travelers designed to injure Dresco and causing Dresco additional losses of $500,000; Dresco further sought to

recover $1,000,000 in exemplary damages. On January 5, 1978, Dresco amended Count III of its counterclaim to allege Ballenger's and Travelers' interference with the contractual relation between Dresco and its insulation subcontractor. On January 11, 1978, the trial court ordered that the jury trial proceed in phases, the first consisting of all of the aforementioned claims except those claims alleged in Count VI of Dresco's amended counterclaim, which claims were to comprise the second phase of the trial.

Phase I of the case proceeded from January 11, 1978, through June 15, 1978, when the jury returned verdicts on all issues submitted. On July 5, 1978, the trial court ordered final judgment as follows in accordance with Code § 81A-154 (b): (i) that Dresco recover $505,414.37 as general damages and $150,000.00 as attorney fees jointly and severally from Ballenger and Travelers; (ii) that Ballenger recover $50,000.00 from Jones & Fellers; (iii) that Jones & Fellers recover nothing from Dresco, Ballenger or Travelers; (iv) that Ballenger recover nothing from Dresco or USF&G; (v) that Dresco recover nothing from Jones & Fellers; (vi) that Travelers recover nothing from Jones & Fellers; and (vii) that Count VI of Dresco's counterclaim be severed for separate trial.

On August 3, 1978, Dresco filed a motion for judgment notwithstanding the verdict and, in the alternative, for new trial solely as to Dresco's counterclaim against Jones & Fellers. These motions were overruled by order of the trial court entered February 25, 1980.

On August 4, 1978, Ballenger and Travelers filed a notice of appeal to this court (docketed as Case No. 59988) from the trial court judgment entered July 5, 1978. In response, Jones & Fellers filed a timely cross-appeal (docketed as Case No. 59989).

Thereafter, Ballenger and Travelers obtained various orders of the trial court extending the time within which to file a transcript of the proceedings below. On December 11, 1979, Dresco moved to dismiss the appeal in Case No. 59988 for unreasonable delay in filing the transcript of proceedings. This motion was denied by the trial court on February 25, 1980.

Finally, on March 10, 1980, Ballenger and Travelers filed a second notice of appeal (docketed as Case No. 59990) enumerating identical errors and containing argument identical to that supporting Case No. 59988. In response, Jones & Fellers once again filed a cross-appeal (docketed as Case No. 60024) virtually identical to its cross-appeal in Case No. 59989.

On March 25, 1980, Dresco and USF&G filed a notice of appeal (docketed as Case No. 60107) and an identical notice of cross-appeal (docketed as Case No. 60170). In addition, Dresco and USF&G have

filed motions in this court to dismiss the appeals in Case Nos. 59988 and 59990.

The issues presented by each of these motions, appeals and cross-appeals are addressed below.

## II. *Case Numbers 60107 and 60170.*
### A. *Timeliness of appeals in Case Nos. 59988 and 59990.*

Dresco has filed motions with this court to dismiss the appeals of Ballenger and Travelers alleging that (i) though Ballenger and Travelers filed a timely notice of appeal in Case No. 59988, that appeal should be dismissed for unreasonable delay in the preparation and filing of the trial transcript, and that (ii) the notice of appeal in Case No. 59990 was tardily filed. Dresco's first six enumerations of error are similarly directed, alleging error regarding the trial court's rulings on motions to dismiss the appeals and motions for extensions of time within which to file the trial transcript. In response, Ballenger and Travelers contend that Dresco's timely alternative motion for judgment notwithstanding the verdict or for new trial as regards Jones & Fellers effectively tolled the time for all parties to file a notice of appeal and thereby rendered Ballenger and Travelers' appeal in Case No. 59988 premature and void per Code § 6-803. Ballenger and Travelers further contend, however, that the notice of appeal in Case No. 59990 was timely filed within thirty days after the trial court's order of February 25, 1980, denying Dresco's motions. This reasoning, it is argued, renders moot Dresco's argument regarding unreasonable delay in filing the transcript, the transcript having been filed on February 11, 1980, prior to the filing of the second appeal itself.

In their briefs, the parties have identified as a central issue whether or not in a multi-party case such as this a motion for a new trial or for judgment notwithstanding the verdict as regards only one party tolls the time within which other parties must file appeals. In that we find no unreasonable delay in the filing of the transcript herein and in that the issues presented on appeal in Case Nos. 59988 and 59990 are identical, we do not deem this a proper case for the determination of this issue, and we therefore expressly reserve judgment thereon.

"The failure to timely file a transcript is not a basis for dismissal of the appeal unless the trial court finds that the delay was unreasonable, and that the unreasonable delay was inexcusable. Code Ann. § 6-809 (b), see *Young v. Climatrol Southeast Dist. Corp.,* 237 Ga. 53 (226 SE2d 737) (1976). The trial court's decision on this issue will be reversed only for an abuse of discretion. See *Gilman Paper Co. v. James,* 235 Ga. 348 (219 SE2d 447) (1975)." *DuBois v. DuBois,* 240 Ga. 314 (240 SE2d 706) (1977). As noted above, the trial

record in this case consists of more than 14,000 pages of testimony and exhibits. On six occasions Ballenger and Travelers timely sought and received court orders granting extensions for filing the transcript. The transcript was properly filed within the time period allotted by the court.

Dresco claims that the final six-months' delay in filing was caused entirely by opposing counsel's request of the court reporter to "hold off on the copying of certain exhibits." Yet, the supplemental affidavit of that court reporter indicates that she had always received "very prompt payment" from Ballenger and Travelers for the costs of transcription, that she had received no indication that they would not pay for additional copying charges and that at no time did anyone for Ballenger or Travelers insist that she not proceed with the copying. Indeed, the record reveals substantial confusion as to what was to be included within the record on appeal.

In the light of such evidence, we cannot find that the trial court abused its discretion in granting the time extensions or in refusing to dismiss the appeal for unreasonable delay. The transcript having been timely filed for both Case Nos. 59988 and 59990, and the issues presented by both appeals being identical, it is not necessary for us to determine which appeal is properly pending before this court.

B. *Denial of Dresco's motions for directed verdict, judgment notwithstanding the verdict and new trial.*

Prior to the submission of this case to the jury, Dresco moved for a directed verdict on its counterclaim as against Jones & Fellers; after the jury returned its verdict, Dresco alternatively moved for a judgment notwithstanding the verdict or for a new trial. Each of these motions was denied by the trial court. Dresco asserts error as to each such denial.

"If there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." Code § 81A-150 (a). "Only where there is no conflict and a verdict is demanded as a matter of law is it error for the trial court to fail to direct a verdict." *Weatherspoon v. K-Mart Enterprises,* 149 Ga. App. 424, 427 (254 SE2d 418) (1979). "[I]n giving consideration to a motion for judgment notwithstanding the verdict, the court is concerned substantially with the same principles of law as are applicable upon consideration of the motion for directed verdict." *Jones v. Spindel,* 143 Ga. App. 341, 343 (238 SE2d 703) (1977). Further, as regards the review of an order from a motion for new trial, "[o]ur responsibility on appeal is not to weigh the evidence and give a de novo opinion on where the greater weight of the evidence lies but merely to determine if there is sufficient evidence to authorize the

trial court's judgment." *Hallford v. Banks,* 236 Ga. 472 (224 SE2d 35) (1976).

Applying these well-settled principles to the instant case, we do not find that the trial court erred in denying Dresco's motions. Dresco's counterclaim against Jones & Fellers essentially alleges that Jones & Fellers' negligent preparation of plans and specifications for the Project caused substantial delay and damage to Dresco. Dresco has cited us to a number of instances where the transcript reveals that Jones & Fellers either initiated or acquiesced in change orders modifying the plans and specifications originally prepared. The record, however, is also replete with evidence indicating that Jones & Fellers' designs were in full accord with generally accepted architectural and engineering practices, and that on numerous occasions serious difficulties with the steam distribution system, the chill water system and the insulation work on the heating and air conditioning ducts resulted directly from Dresco's defective work. In the face of such evidentiary conflicts regarding elements material to Dresco's claim, the trial court did not err in denying Dresco's motions.

### III. *Case Nos. 59988 and 59990.*
#### A. *Attorney fees.*

Ballenger and Travelers cite Code § 20-1404 and assert that the trial court erred in permitting Dresco to recover attorney fees in this action. Code § 20-1404 provides as follows: "The expenses of litigation are not generally allowed as a part of the damages; but if the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." Ballenger and Travelers offer the following arguments: (i) Code § 20-1404 does not permit the recovery of attorney fees by a defendant in an action (such as Dresco); (ii) even if a defendant may recover attorney fees in an action, Dresco may not so recover because the amount of its judgment against Ballenger and Travelers was substantially less than the amount sought; and (iii) Ballenger and Travelers were not guilty of bad faith or stubborn litigiousness and did not cause Dresco unnecessary trouble and expense.

1. Ballenger and Travelers cite several cases for the general proposition that a defendant cannot avail itself of the provisions of Code § 20-1404. *Fender v. Ramsey,* 131 Ga. 440 (62 SE 527) (1908); *Wallace v. Jones,* 101 Ga. App. 563 (114 SE2d 436) (1960); *Hickman v. Frazier,* 128 Ga. App. 552 (197 SE2d 441) (1973); *Pitman v. Dixie Ornamental Iron Co.,* 122 Ga. App. 404 (177 SE2d 167) (1970); and *Watson v. Planters & Citizens Bank,* 110 Ga. App. 725 (140 SE2d 30) (1964). Each of the foregoing cases is readily distinguished from the

instant proceeding, however, in that each of the defendants therein asserted a claim for attorney fees based solely upon the respective plaintiff's bad faith in filing that suit; i.e. in each of these cases the defendant(s) sought, in effect, to assert a counterclaim for malicious use of legal process. It is precisely this sort of claim for attorney fees that Code § 20-1404 is designed to prevent. As noted by the Supreme Court in *Fender v. Ramsey,* supra, 131 Ga. at p. 443: "There is no law by which every case brought by a plaintiff can be turned into a damage suit by the defendant against the plaintiff for bringing it, while it is still pending."

The present case is clearly of a different nature. Not only has Dresco (the nominal defendant herein) asserted claims for relief entirely independent of any simple assertion that Ballenger acted in bad faith in filing the within suit, but Dresco has been awarded over $500,000 by way of such claims. Dresco clearly asserted independent claims for recovery by way of counterclaim. We are of the view that in such a case the simple denomination of one party as plaintiff and another as defendant should not dictate a possible award of attorney fees. As we have frequently stated, "There is no magic in mere nomenclature." *Girtman v. Girtman,* 191 Ga. 173, 180 (11 SE2d 782) (1940). Such a "magical" reading of Code § 20-1404 would endorse a "race to the courthouse" theory of recovery that we cannot ascribe to the legislature. Section 20-1404 should, on the contrary, be read to permit any party prosecuting a viable, independent claim to recover attorney fees whenever the enumerated statutory criteria for such an award are met.

Ballenger and Travelers direct our attention to three decisions of this court wherein, they allege, a defendant asserting an independent counterclaim against a plaintiff has nevertheless been barred from recovering attorney fees under Code § 20-1404. In *Taylor v. Ga. Power Co.,* 137 Ga. App. 44 (222 SE2d 869) (1975), this court considered a condemnee's claim for attorney fees on the grounds that the condemnor had acted in bad faith in first refusing the condemnee's request to limit the interest it sought to condemn and in substantially later amending its notice of condemnation to reflect that limitation. We noted Supreme Court decisions holding that the burden of proof in such a case was on the condemnor to show damages, the effect of which was to make the condemnor a plaintiff and the condemnee a defendant. We therefore held that "[i]n view of these Supreme Court decisions we are unable to hold, as we otherwise would, that the condemnee has alleged a case for jury submission on the bad faith-attorney fee issue." Id. at 46. *Taylor v. Ga. Power Co.,* supra, is not therefore to be read as a general statement that a defendant can never recover attorney fees, but is rather to be limited,

as were we, to the specific procedural consequences of condemnation actions.

Appellant is correct in noting that in the cases of *White v. Watson Enterprises,* 129 Ga. App. 203 (199 SE2d 357) (1973), and *Solomon Refrigeration, Inc. v. Osburn,* 148 Ga. App. 772 (252 SE2d 686) (1979), the respective defendants did assert independent counterclaims and also sought to recover litigation expenses. In both cases, this court relied upon the above-cited line of malicious use of process cases in denying the defendants an award of attorney fees. Reliance upon that precedent was unfortunate, however.

The underlying policy of Code § 20-1404 barring a defendant from transforming a plaintiff's case into that defendant's damage suit for having been sued in no manner relates to cases wherein the defendant has asserted a viable, independent claim against the plaintiff. A rigid rule preventing any defendant from recovering litigation expenses works particular inequity when a defendant (as Dresco herein) is required by law to file a compulsory counterclaim or be deemed to have waived the claim altogether. It would indeed be paradoxical to require a defendant to assert a given bad faith claim per Code § 81A-113 (a) while at the same time withholding from that defendant any possible recovery of litigation expenses per Code § 20-1404. Further, we are not of a mind to provide a defendant who might assert a permissive counterclaim under Code § 81A-113 (b) with an incentive to file a separate lawsuit instead as a "plaintiff" so that he can seek to recover his attorney fees. Such would be directly contrary to the principles of judicial economy which the Civil Practice Act was in part enacted to foster.

Let there be no confusion as to our holding here. Nothing in what we have said is intended to disturb that earlier cited line of authority holding that a defendant cannot recover in a given lawsuit the expenses of defending that suit. Such a holding would undermine the existence of the malicious use of legal process cause of action. We simply hold today that when a defendant asserts a claim for relief independent of a claim for litigation expenses incurred in defending against a plaintiff's case-in-chief, Code § 20-1404 does not automatically operate to bar any recovery by the defendant of litigation expenses incurred in prosecuting such an independent claim. Any language in the above-cited cases to the contrary is therefore disapproved.

2. Ballenger and Travelers next contend that even if a defendant could theoretically recover attorney fees (as we have here held that it could), Dresco may not recover attorney fees because the amount of its judgment against Ballenger and Travelers was substantially less than the amount Dresco originally sought. In so

arguing, however, Ballenger and Travelers rely upon a line of cases that has recently been expressly overruled by this court in the case of *Ga. Carolina Brick & Tile Co. v. Brown,* 153 Ga. App. 747 (266 SE2d 531) (1980). In that case, we noted that the true focus of an award of attorney fees under Code § 20-1404 is to punish a party that has acted in bad faith, and the relationship between that party's bad faith and the amount of damages awarded versus the amount sought is generally "purely coincidental." Id. at 752. We therefore expressly overruled those cases that had applied the so-called "great disparity" rule so as to bar a party's recovery of attorney fees in bad faith cases. In the instant case, Dresco specifically argued that Ballenger had acted in bad faith; Ballenger and Travelers' attempt to apply the great disparity rule herein is thus without merit.

3. Finally, Ballenger and Travelers contend that since there existed a "bona fide controversy" with Dresco, they cannot, as a matter of law, be found to have acted in bad faith or to have been stubbornly litigious so as to support an award of attorney fees under Code § 20-1404. This court has recently noted, however, that the "bona fide controversy" test relates to the issue of stubborn litigiousness. *Nestle Co. v. J. H. Ewing & Sons,* 153 Ga. App. 328 (265 SE2d 61) (1980). An independent inquiry into bad faith (as here alleged) is necessary.

At trial, Dresco argued that Ballenger and Travelers had received a substantial payment of reduction in retainage from the owner, a pro rata share of which was to be paid over to Dresco according to the terms of the subcontract. Dresco further argued that not only had Ballenger and Travelers failed to pay Dresco its share, but that they had wilfully concealed from Dresco the receipt of such funds. Having reviewed the record, we find sufficient evidence to support an implied finding of bad faith going to the underlying transaction so as to infer that Ballenger and Travelers never intended to perform this obligation under the subcontract. The award of attorney fees was therefore authorized under Code § 20-1404. *Spearman v. Flanders,* 143 Ga. App. 759 (240 SE2d 141) (1977).

B. *Allowance of amendments to Dresco's counterclaim.*

Ballenger and Travelers next except to trial court orders permitting Dresco to amend its original counterclaim on December 21, 1977, and on January 5, 1978. Dresco's amendment of December 21, 1977, added Count VI to its counterclaim and alleged that Ballenger and Travelers had intentionally interfered with Dresco's business relations, thereby causing Dresco additional damage of $350,000 and entitling Dresco to $1,000,000 in exemplary damages. The issues raised by this count were subsequently severed for separate trial as Phase II of this case. Dresco's amendment of January

5, 1978, added certain language to one paragraph of Count III of the original counterclaim and alleged that certain conduct by Ballenger and Travelers in breach of the subcontract with Dresco interfered with a known contract between Dresco and its insulation subcontractor, thereby causing a breach of that contract to Dresco's additional damage of $201,000. The issues raised by this latter amendment were tried below.

Ballenger and Travelers first assert that the amended claims sound in tort and are barred by the four-year statute of limitation for injury to personalty. Code § 3-1002. We do not agree. "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Code § 81A-115 (c).

The instant amendments alleged no conduct of Ballenger or Travelers that was not previously alleged in Dresco's original counterclaim. The only new allegations of the amendments were that Ballenger and Travelers' conduct proximately resulted in additional damage by reducing the fair market value of Dresco's business and by causing the breach of a subordinate contract. We view this additional damage as in the nature of consequential damages flowing foreseeably from Ballenger and Travelers' alleged breach of the subcontract. Thus, this amendment effectively increasing the amount of damages sought but not altering the transactional base from which these damages arose properly related back to the date of the original counterclaim. *Pardue Const. Co. v. City of Toccoa,* 147 Ga. App. 132 (248 SE2d 199) (1978).

Ballenger and Travelers cite certain language from *Murray Chevrolet Co. v. Godwin,* 129 Ga. App. 153 (199 SE2d 117) (1973) to the effect that the doctrine of relation back does not permit a pleading asserting a contract claim to be amended to assert a tort claim when the assertion of the tort claim would otherwise be barred by the statute of limitation. Such reasoning, it is argued, should apply herein to disallow Dresco's amendments. In *Murray Chevrolet,* however, the plaintiff had originally filed an action to recover certain expenses under an insurance contract (including the insured merely as a nominal defendant), but subsequently dismissed the insurer as a defendant and amended his complaint to allege two counts against the insured alone for damages flowing from the negligence of the insured's employee. We noted that such an amendment effectively changed the party against whom recovery was sought and thus called into play the notice requirements of Code § 81A-115 (c) (1) and (2). We held that the original contract claim against the insurer alone did not provide the insured with sufficient notice of the possible tort

claims later asserted by amendment, and that the amendment did not, therefore, relate back to the time of the original filing.

The present case is quite different. Dresco's amendments did not in any way shift primary liability under its counterclaim from Ballenger and Travelers, but merely set forth tort claims against Ballenger and Travelers seeking to recover additional damages flowing from virtually the same conduct that Dresco had originally claimed constituted a breach of contract. As such, we find that Dresco's amended claims sounding in tort properly related back to the time of filing of the original contract claim, and that the statute of limitation did not bar the assertion thereof.

Ballenger and Travelers next contend that the trial court abused its discretion under Code § 81A-113 (f) in permitting this amendment. "When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up a counterclaim by amendment." Code § 81A-113 (f).

Ballenger and Travelers correctly note that in *Blount v. Kicklighter,* 125 Ga. App. 159, 161 (186 SE2d 543) (1971), we indicated that the trial judge should in cases of omitted counterclaims hold a separate hearing considering the criteria of Code § 81A-113 (f) to determine "whether the delay was occasioned by oversight, inadvertence or excusable neglect." We have also held that "the trial judge should allow the amendment 'when justice requires,' even though the other three requirements may not be met." *Kitchens v. Lowe,* 139 Ga. App. 526, 529 (228 SE2d 923) (1976). The record reflects that Dresco was unaware of the extent of its claims until two months prior to the filing of this amendment. As noted above, the amendments allege no conduct by Ballenger or Travelers significantly different from that originally alleged by Dresco. We find no abuse of the trial court's discretion in permitting this amendment.

## C. *Remaining exceptions.*

1. Ballenger and Travelers next contend that the trial court erred in admitting certain of Dresco's exhibits against themselves while not admitting them as to Jones & Fellers. This contention is without merit.

The exhibits referred to consist of six pieces of correspondence from Dresco informing Ballenger of certain extra expenses Dresco had allegedly incurred on the Project due to deficient work performed by Ballenger or by Jones & Fellers. As against Jones & Fellers, that correspondence is relevant only as proof of the allegations contained therein (i.e. as hearsay) or as demonstrating that Jones & Fellers was put on notice of those claims. However, none of the correspondence indicated that copies had been forwarded to

Jones & Fellers. As such, it was inadmissible hearsay as to Jones & Fellers and could not be offered to show notice. We, therefore, find no error in the partial exclusion of this evidence.

Further, even if the exclusion as to Jones & Fellers was error, that exclusion in no manner prevented Ballenger from presenting other evidence that would have been necessary to support the conclusory allegations of liability and calculations of damages contained in the correspondence. The error, if any, did not affect any substantial rights of Ballenger or Travelers and was, therefore, harmless. Code § 81A-161.

2. Ballenger and Travelers next contend that the trial court erred in admitting certain summaries of business records into evidence. Dresco, in its reply brief, has asserted that no objection was entered at trial as to the admission of this evidence. Clearly, a failure to object at trial to the admission of this evidence would constitute a waiver and would bar Ballenger and Travelers from enumerating the admission of this evidence as error on appeal. However, neither in Ballenger and Travelers' original brief nor in their supplemental brief filed over a month after Dresco's reply did they cite this court to any objection or ruling in the 14,000-page transcript as to this evidence. Through our own search of the record, we have located a point in the proceedings below where Dresco tendered the particular exhibit which Ballenger and Travelers now contend was inadmissible. (T-5817). At that point, counsel did indicate that he had "a number of objections," but, without stating the specific objections or/any grounds therefor, agreed with the court to defer any discussion as to these objections until a later date. Council has not cited us to, nor have we been able to locate, any subsequent point in the proceedings where Ballenger and Travelers renewed these objections and the court actually ruled upon them. We are, therefore, unable to consider this enumeration of error. Code § 24-3615 (c) (3). *Justice v. Dunbar,* 152 Ga. App. 831 (264 SE2d 301) (1979); *United States Shoe Corp. v. Jones,* 149 Ga. App. 595 (255 SE2d 73) (1979).

3. Ballenger and Travelers next contend that the trial court erred in denying their motion for a directed verdict as to Dresco's claims because those claims were not made within one week after incurred as required by Article E-37 of the general contract. Article E-37 provides in relevant part as follows: *"Relationship of Contractor and Subcontractors.* — (a) Obligations of Each — The contractor agrees to bind every subcontractor and every subcontractor agrees to be bound by the terms of the contract documents insofar as they are applicable to his work, including the following provisions of this article: THE SUBCONTRACTOR AGREES * * (3) to make all claims for extras, for extensions of time [see Articles E-18 and E-36]

or for damages to the contractor in the manner provided in the general conditions for like claims by the contractor upon the owner, *except that the time for making claims for extra expense is one week."* (Emphasis supplied.)

From a review of the record, we find that sufficient evidence was presented at trial to support a jury finding that much of Dresco's extra expenses of which Ballenger and Travelers here complain were occasioned not by change orders in the ordinary course of performance under the construction contract, but by actual breaches of contract by Ballenger. Evidence indicates, for example, that Ballenger first required that duct insulation be installed in one manner but, later, following numerous difficulties, required the substantial reinstallation of the insulation by a more secure means. Such double performance required of Dresco could reasonably be found to have caused extra expense outside the foreseeable scope of Dresco's contractual performance, and therefore outside the scope of the Article E-37 one-week notice requirement.

Further, sufficient evidence exists to substantiate Dresco's claim that Ballenger had actual notice of the extra expenses being incurred by Dresco and yet permitted the additional work to proceed without objection. A jury question clearly existed as to whether such conduct constitutes a waiver of Ballenger's right to enforce strict compliance with the one-week notice requirement. Code § 20-116.

4. Ballenger and Travelers further assert error in admitting certain testimony by three witnesses to impeach the prior testimony of Mr. Charles Colbert and Mr. Lamar George, Ballenger's Project superintendents. In the first instance, we note that the testimony of Mr. Melvin Doyle of which Ballenger and Travelers here complain was not impeachment testimony at all, as it in no manner impugned Mr. Colbert's general character for truthfulness; the court below specifically instructed the jury not to consider the testimony for that purpose.

Ballenger and Travelers further contend that certain testimony by Mr. John Milam and Mr. John Sims was elicited for impeachment purposes by questioning those witnesses' personal knowledge and association beyond that permitted under Code § 38-1804. However, having reviewed the testimony here in question, we find that every reference to the impeaching witness' "personal knowledge" or "association" served only to develop a foundation upon which to base the witness' statement as to reputation. Such a foundational line of questioning is not only permitted, but is mandated by the Code. "The impeaching witness should be first asked as to his *knowledge* of the general character of the witness." Code § 38-1804. (Emphasis supplied.)

Finally, we find that any references herein to the impeaching witness' "opinion" lay in the somewhat misleading, but nonetheless harmless, phrasing of the question, "What in your opinion is the witness' reputation?" We are of the view that in such a question the word "opinion" is superfluous verbiage that elicits no more from the impeaching witness than the simple statement of the impeached witness' reputation, which Code § 38-1804 specifically authorizes. Accordingly, we find no error.

5. Ballenger and Travelers next assert that the trial court erred in admitting testimony and exhibits relating to the manner in which Ballenger calculated pricing for certain change orders submitted by Ballenger to the Building Authority. In the course of construction of the Project some 300 change orders were submitted. Substantial concern arose as to possible discrepancies between the costs Ballenger submitted to the Building Authority and those actually incurred. The Building Authority hired an independent accounting firm to audit Ballenger's books and records, and certain discrepancies of this sort were in fact discovered.

Ballenger argues that evidence as to these discrepancies in its record keeping was not relevant to any claims litigated below in that the change orders in question were matters entirely between Ballenger and the Building Authority. We do not agree. The proven discrepancies appeared within Ballenger's records relating to the Project, and it was upon those business records that central issues of this case were tried, including alleged back charges which led to the withholding of substantial sums from Dresco. Evidence of improper record keeping is clearly relevant and admissible to cast doubt upon the accuracy of those records when relied upon to establish expenses incurred and billed.

As to Ballenger and Travelers' assertion that the impeachment of business records herein was overly time-consuming and prejudicial, these are matters clearly within the discretion of the trial court, and we do not find any abuse of that discretion here. " 'The Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value.' Agnor's Georgia Evidence, § 10-2, p. 165." *Sprouse v. State,* 242 Ga. 831, 833 (252 SE2d 173) (1979).

6. Ballenger and Travelers next contend that the trial court erred in permitting one of Dresco's witnesses to read into the record certain portions of correspondence between Dresco and Ballenger. We find no merit in this enumeration.

As has been noted, this was an unusually lengthy trial involving some 7,000 pages of exhibits alone. The correspondence to which Ballenger refers in this enumeration was generally admitted to reflect notice of Dresco's various claims. To have required Dresco simply to

submit this quantity of technical correspondence to the lay jury with the expectation that the jury could sift through and digest material portions would have been unreasonable. Further, we find that the trial court could have concluded quite reasonably and permissibly that to require Dresco's witness in each instance first to review the correspondence and then to testify from his "refreshed" recollection as to the substance of the letters would have been unduly burdensome and time-consuming.

Having reviewed the record, we find that counsel for Dresco merely used quoted portions of the correspondence as a springboard for additional questioning, and never was opposing counsel prevented from objecting to the substance of matters quoted. Indeed, on several occasions the court excluded certain portions sought to be quoted, or found that the correspondence spoke for itself and required that a given document be submitted into evidence without quotation into the record. Accordingly, we find no error or abuse of discretion.

7. Finally, Ballenger and Travelers assert error in denying their motion for a directed verdict on Dresco's prayers for punitive damages. "It is an old and sound rule that error to be reversible must be harmful. *First Nat. Bank v. Am. Sugar Refining Co.,* 120 Ga. 717 (48 SE 326); *Burger Chef Systems v. Newton,* 126 Ga. App. 636, 639 (191 SE2d 479). Where a plaintiff in error brings a case as here, he must show error which has hurt him. This court is not an expounder of theoretical law, but it administers practical law, and corrects only such errors as have practically wronged the complaining party. *Brown v. City of Atlanta,* 66 Ga. 71." *Wedgewood Carpet Mills v. Color-Set, Inc.,* 149 Ga. App. 417, 419-420 (254 SE2d 421) (1979).

Dresco was not awarded any punitive damages. By definition, therefore, any error in this regard was harmless.

IV. *Case Nos. 59989 and 60024.*

The appeals in Case Nos. 59988 and 59990 being affirmed, Jones & Fellers' cross-appeals in Case Nos. 59989 and 60024 are dismissed.

*Judgment affirmed. Quillian, P. J., McMurray, P. J., Smith, Shulman, Banke, Birdsong, Carley and Sognier, JJ., concur.*

ARGUED JUNE 2, 1980 — DECIDED NOVEMBER 13, 1980 —

*Edward H. Wasson, Jr.,* for appellants (Case Nos. 59988 and 59990).

*C. James Jessee, Jr., David A. Handley, James C. Huckaby, Jr.,*

*James B. Ritchie,* for appellees.

*David A. Handley, James C. Huckaby, Jr., James B. Ritchie,* for appellant (Case Nos. 59989 and 60024).

*Edward H. Wasson, Jr., C. James Jessee, Jr.,* for appellees.

*C. James Jessee, Jr., James B. Ritchie, Jr.,* for appellants (Case Nos. 60107 and 60170).

*Edward H. Wasson, Jr., David A. Handley,* for appellees.