**TRI–STATE CONSUMER INSURANCE COMPANY, INC., Plaintiff,**

v.

**LEXISNEXIS RISK SOLUTIONS, INC., Defendant.**

**Civil Action No. 1:11–cv–1313–TCB.**

United States District Court, N.D. Georgia, Atlanta Division.

May 3, 2012.

---

Christine R. Arnold, Irvine, CA, for Plaintiff.

Kamal Ghali, Randi Engel Schnell, Bondurant Mixson & Elmore, Johnny Wayne Pierce, Pierce & Young, Atlanta, GA, Kathleen Mary Kushi Carter, Hollins Law, Irvine, CA.

Jill Anne Pryor, Atlanta, GA, for Defendant.

## ORDER

TIMOTHY C. BATTEN, SR., District Judge.

This matter is before the Court on Plaintiff Tri–State Consumer Insurance Company's motion to dismiss Defendant LexisNexis Risk Solutions, Inc.'s counterclaim [34].

## I. Background

### A. Procedural Background

On January 21, 2011, Tri–State filed this action in the Superior Court of Fulton County. On February 21, 2011, Lexis filed its answer, which included a counterclaim against Tri–State. That same day, Lexis also filed a motion to dismiss Tri–State's claims. In response to Lexis's motion to dismiss, Tri–State filed an amended complaint, which included the addition of two claims under federal law. Based on Tri–State's adding the federal-law claims, Lexis removed the action to this Court on federal-question grounds.[1]

On April 22, Lexis filed another motion to dismiss, and that same day, Tri–State filed yet another amended complaint.[2] On April 29, Lexis filed a third motion to dismiss. Following oral argument on the motion, on November 10, the Court issued an order granting Lexis's motion in part by dismissing all of Tri–State's claims except its claims for breach of contract, breach of the warranty of repair, and

breach of the implied covenant of good faith and fair dealing.

On November 30, 2011, Lexis again filed its answer to Tri–State's second amended complaint and a counterclaim against Tri–State for (1) anticipatory repudiation, (2) breach of contract, (3) breach of the implied covenant of good faith and fair dealing, (4) improper retention of Lexis's property, and (5) bad faith litigation and stubborn litigiousness.[3] Tri–State moves to dismiss all of Lexis's claims except its claim for improper retention of its property.

### B. Facts Alleged by Lexis in Its Counterclaim

On March 31, 2008, Lexis and Tri–State executed two contracts-a master agreement and software and services schedule-for the development, sale, and provision of software to Tri–State. The agreements created a framework by which the parties would work cooperatively to create customized software for Tri–State's use in its insurance business.

The agreements did not require Lexis to complete the software by a specific date, but instead required both parties' cooperation in performing certain tasks necessary for the development and implementation of the software. Tri–State knew that without its cooperation, Lexis could not design and produce software customized to meet Tri–State's needs.

For example, section 11.5 of the master agreement specified that Lexis would

---

1. Although the stated ground for removal was federal-question jurisdiction, Lexis also alleged that the parties are citizens of different states and that the amount in controversy exceeds $75,000. Thus, although the Court has dismissed Tri–State's federal claims, this Court has diversity jurisdiction under 28 U.S.C. § 1332.

2. Tri–State's allegations related to its claims against Lexis are set forth in detail in the Court's November 10, 2011, 823 F.Supp.2d 1306 (N.D.Ga.2011), order ruling on Lexis's motion to dismiss [32].

3. The answer and counterclaim Lexis filed in this Court on November 30, 2011 mirrors the answer and counterclaim that it filed in state court on February 21, 2011.

"have no liability for delays in the provision of the Project implementation services caused by [Tri–State's] failure to complete its tasks or provide information or resources in a timely manner." And the software and services schedule required Tri–State to, inter alia, (1) "[a]ssign competent project, insurance/business and technical staff to review and sign-off on the final [project]" (§ 10(a)(ii)); (2) "provide adequate resources to ensure that the [client requirements book] process is completed within" seventy-five days of the software and services schedule's execution (§ 10(a)(iii)); and (3) participate in executive governance committee meetings as required by master agreement § 7.1 (§ 10(a)(xi)). Additionally, sections 3, 5, 6 and 7 of the master agreement required ongoing cooperation from Tri–State in the form of, among other things, testing after delivery of the software and designating coordinators to identify problems.

According to the software and services schedule § 8(a), Tri–State was required to make several payments to Lexis for a base-software license fee. Those payments were "due as follows: $250,000 upon execution of the Master Agreement [and] $125,000 Billable monthly beginning May 1, 2008 and ending on December 1, 2008." The parties further agreed, pursuant to the software and services schedule § 8(a), that Lexis would create certain customized add-ons for a flat-fee of $245,000 and a number of other customizations to be paid on a time and materials basis.

Lexis developed for and delivered to Tri–State a number of software components and certain software customizations, as well as the policy-decisions batch of software. However, Lexis's ability to complete the development and implementation of the overall project was delayed by Tri–State's various change requests. Tri–State further hindered the project's progress by failing to timely provide key infor-mation to Lexis and not devoting sufficient resources to the project.

In April 2009, the parties "re-baselined" the project, meaning they generated new target dates for the project's completion. Starting that month, Lexis generated weekly status reports so as to keep Tri–State apprised of the progress of the software development.

In May 2009, Peter Kardas, Tri–State's project manager, sent Lexis an email acknowledging that the software project would be delayed. But in July 2009, Tri–State informed Lexis that its president Penny Hart had decided to put the software project on indefinite hold, had reassigned Tri–State's internal resources away from the project, had terminated Tri–State's project manager, and had left the country on vacation. That same month, in response to Hart's email, Lexis notified Tri–State that without Tri–State's involvement Lexis could not complete the project. And in an effort to restart the project, in August 2009 Lexis's vice president of its software division, Marvin Karlow, sent Hart a go-forward proposal. Tri–State rejected Karlow's offer.

Despite the fact that Tri–State had suspended all work on the project and knew that Lexis could not complete the project without Tri–State's cooperation, on January 22, 2010, Tri–State sent Lexis a letter alleging that pursuant to § 10.3 of the master agreement, Lexis had materially breached the agreements by failing to deliver the software on time. Section 10.3 of the master agreement provides that Tri–State can terminate the agreements if Lexis "breaches any material term of this Agreement and fails to initiate a remedy for such breach within (30) calendar days after receiving notice thereof from [Tri–State]."

Three days later, Lexis responded to the letter by proposing that members of the

project's executive team meet to (1) identify the project's problems, (2) understand the specific allegations which Tri–State believed gave rise to the allegation of breach, (3) outline the respective interests of the parties, (4) identify areas of alignment and disagreement, and (5) determine a mutually acceptable arrangement to address each party's concerns.

On February 5, 2010, Tri–State communicated to Lexis that its executive team was not presently available but nonetheless demanded that Lexis deliver the completed project within thirty days. At that point, Tri–State suspended all work on the project, even though it knew that Lexis could not possibly deliver the completed project without Tri–State's participation and cooperation.

On February 16, Lexis sent Tri–State a letter informing it that Tri–State's cooperation was a material condition of performance and that it was still willing to re-engage with Tri–State on the project. On February 24, 2010, Tri–State informed Lexis that it was terminating the agreements.

On March 26, 2010, Lexis notified Tri–State that it had outstanding invoices in the amount of $383,178.62 and demanded payment in that amount. Tri–State has failed to pay these invoices and also has a number of other substantial payments due to Lexis. Furthermore, Tri–State failed to return any of Lexis's proprietary materials and has not verified that Tri–State has purged all proprietary information and software as required by the master agreement.

## II. Discussion

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal citation omitted). Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

In considering a party's motion to dismiss under Rule 12(b)(6), the allegations in the pleading must be accepted as true and construed in the light most favorable to the pleader. *Powell v. Thomas,* 643 F.3d 1300, 1302 (11th Cir.2011). But the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations. *Iqbal,* 129 S.Ct. at 1949–50. Thus, evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and ... determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

### B. Contractual Limitations of Action Clause

■ The master agreement includes a clause limiting the time within which either side can sue the other for allegedly breaching the agreement. The parties dispute

the effect of this clause on Lexis's claims. Section 8.5 of the master agreement provides:

> No action, regardless of form or substance, arising out of this Agreement or the performance or nonperformance of any of the Parties' obligations hereunder may be brought more than one (1) year after a party knew or should have known of the occurrence of the event giving rise to such cause of action.

Tri–State contends that this clause bars Lexis's claims for anticipatory repudiation, breach of contract and breach of the implied covenant of good faith and fair dealing because these claims arose before February 21, 2010, i.e., more than a year before Lexis filed its counterclaim on February 21, 2011. In response, Lexis argues that because the Court ruled in its November 10, 2011 order that Tri–State's allegation of an August 2009 agreement between the parties could extend the one-year contractual limitations period for Tri–State's claims, the time in which Lexis may bring its claims is extended as well.

Before addressing the parties' arguments, it is helpful to provide a brief summary of the Court's holding regarding § 8.5 in its November 10 order ruling on Lexis's motion to dismiss. In that order, the Court found the one-year provision enforceable and applicable to all of Tri–State's claims. Further, the Court concluded that "[a]lthough the one-year limitations provision is enforceable, Lexis has failed to show that as a matter of law it bars all of Tri–State's claims." Specifically, the Court determined that because the master agreement included a clause providing Lexis an unspecified duration in which to cure deficiencies and Tri–State alleged that Lexis attempted to cure deficiencies through January 21, 2010, Tri–State's claims, which were filed on January 21, 2011, were not necessarily barred by the one-year provision. In reaching this conclusion, the Court looked to Tri–State's allegation that the parties entered into an agreement in August 2009 in which they agreed that Lexis had until January 21, 2010 to cure deficiencies in the software. Although Lexis argued in its motion to dismiss that the parties never entered into an August 2009 agreement as Tri–State alleged, the Court held that because Tri–State sufficiently alleged that it allowed Lexis to cure deficiencies in the software up until January 21, 2010, its claims were not barred by § 8.5. The Court found Tri–State's allegations of an August 2009 agreement sufficient to withstand Lexis's motion to dismiss, but noted that because the master agreement required all contract modifications to be in writing, if "at the summary judgment stage Tri–State has [ ] failed to come forward with any evidence of a written [August 2009] agreement, then its claim that such an agreement existed will likely fail."

Turning to Tri–State's motion to dismiss Lexis's counterclaims, the parties disagree as to how the Court should determine the relevant dates upon which the one-year clock began to run for each of Lexis's claims. Tri–State argues that the Court must look solely to the allegations in Lexis's counterclaim in applying § 8.5 to Lexis's claims. Lexis, on the other hand, urges the Court to consider Tri–State's allegations of an August 2009 agreement in determining the relevant date that Lexis's claims began to accrue under the one-year provision. Lexis repeatedly argues that its claims are not time-barred "if the Court rules that the parties entered into a new August 2009 contract." Lexis's argument is flawed for two reasons.

First, in deciding a motion to dismiss, the Court looks to the allegations in the pleading at issue. *See Iqbal*, 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."). Because Lexis is the plaintiff-in-counterclaim, the Court looks to the allegations in its counterclaim to determine whether it has stated a claim upon which relief can be granted. Although Tri–State alleged in its complaint that the parties entered into an August 2009 agreement, at no point in Lexis's counterclaim does it allege the existence of an August 2009 agreement. Thus, the determination of the date that the one-year clock began to run for Lexis's claims cannot be premised upon the existence of the alleged August 2009 agreement.

Further, in its answer Lexis specifically denied Tri–State's allegation that the parties entered into an August 2009 agreement, and Lexis is judicially bound by that admission. *See Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.,* 713 F.2d 618, 621 (11th Cir.1983) (general rule is "that a party is bound by the admissions in his pleadings"). Therefore, unlike Tri–State, Lexis cannot rely on the existence of the August 2009 agreement to extend the one-year provision for its claims.

Second, Lexis's argument that the Court should extend the one-year limitations period for its claims "if the Court determines that there was an August 2009 contract" is nonsensical. The parties are presently conducting discovery, and the Court will not endeavor to predict how it might rule on the issue of whether the parties entered into an agreement in August 2009. In fact, the Court will not have occasion to determine whether an August 2009 contract existed unless Lexis files a motion for summary judgment. Surely, Lexis does not expect (and has not asked) the Court to stay a decision on Tri–State's motion to dismiss until it has ruled on Lexis's anticipated summary judgment motion.

Accordingly, in order to determine whether Lexis's claims are barred by the contractual limitations provision, the Court will examine each claim in light of the claims in Lexis's counterclaim.

## C. Anticipatory Repudiation

 In its claim for anticipatory repudiation, Lexis identifies one instance of anticipatory repudiation by Tri–State: Hart's July 1, 2009 email to Tri–State stating that she was putting the software project on indefinite hold. Tri–State argues that this claim is time-barred by the one-year provision because Lexis brought its counterclaim on February 21, 2011, more than a year after July 1, 2009.

In its brief in opposition to Tri–State's motion, Lexis attempts to salvage the claim by arguing that the claim incorporates all of the preceding allegations of its counterclaim, which establish three instances of anticipatory repudiation: (1) Hart's July 2009 email suspending cooperation on the project, (2) Tri–State's January 22, 2010 letter to Lexis alleging that Lexis had materially breached the agreements by failing to deliver the software, and (3) Tri–State's purported termination of the agreements on February 24, 2010.

Because Lexis did not file its counterclaim until February 21, 2011, its claim premised upon Tri–State's January 22, 2010 letter was not brought within one year as required by the contractual limitations provision and thus even if construed as a repudiation would be time-barred. The issue remains as to whether Lexis may recover on its claim premised upon Tri–State's February 24, 2011 alleged repudiation.

Tri–State argues that because the July 2009 anticipatory breach is time-barred, any subsequent anticipatory breaches are time-barred as well. In support of its contention, it cites *Mobley v. Murray County,* 178 Ga. 388, 392, 173 S.E. 680, 682 (1934), for the proposition that a cause of

action for breach of contract accrues "when plaintiff could have first maintained the action to a successful result." However, *Mobley* dealt only with the triggering date for the statute of limitations, and no contractual limitations-of-action clause was at issue. Therefore, the Court cannot say, based on *Mobley*, that as a matter of law the February 24, 2010 letter was not within the one-year window. Nevertheless, Lexis may not seek to recover based on this alleged repudiation.

Lexis's counterclaim makes clear that Hart's July 1, 2009 email was Tri–State's only repudiation of the agreements and that this repudiation terminated the agreements. First, Lexis avers in paragraph 31, "Ms. Hart's above-described actions as an officer and agent of Tri–State *repudiated* the Agreements and necessarily prevented [Lexis] from completing the remainder of the project." (Emphasis added.) Second, Lexis does not label any other actions by Tri–State as repudiations, and in fact, throughout its counterclaim it refers to only a singular repudiation. For example, Lexis avers in paragraph 35, "From the Agreements' effective date through Tri–State's repudiation of and withdrawal from the project LexisNexis worked diligently to create customized software for Tri–State's use in its insurance business." And in its count for anticipatory repudiation, Lexis refers only to the email from Hart, not any other alleged repudiations. Third, Lexis avers in paragraph 39 that as of January 25, 2010, "Tri–State was *already in breach* of the agreements" and Lexis proposed re-engaging on the project "in an attempt to resolve the parties' dispute." (Emphasis added.) Fourth, Lexis avers in paragraph 42 that on February 16, it communicated to Tri–State that it was "willing to *re-engage* with Tri–State on the project." (Emphasis added.)

Additionally, Lexis's arguments in its briefs in support of its motion to dismiss Tri–State's claims further show that Lexis considered the contract breached and terminated in July 2009 due to Hart's email. In its reply brief, Lexis argues that in August 2009 it sent Tri–State an email in which it "made clear that the remaining software would not be delivered absent a *new agreement* between the parties." (Emphasis added.) Additionally, Lexis argued that the communications between the parties "unambiguously show that [Tri–State] (a) never accepted any LexisNexis proposal to *restart the software project* after [Tri–State] *abandoned it* in July 2009, and (b) did not seek any software 'repairs' after July 2009." (Emphasis added.)

■ Under Georgia law, a party anticipatorily repudiates a contract when it refuses to perform and repudiates the contract prior to the time of its performance. *Textile Rubber & Chem. Co. v. Thermo-Flex Techs., Inc.*, 301 Ga.App. 491, 494, 687 S.E.2d 919, 922 (2009). Lexis alleges in its counterclaim and its motion to dismiss Tri–State's second amended complaint that Tri–State had terminated the parties' agreements before February 24, 2010. If the agreements were already terminated, as Lexis alleges, the February 24, 2010 letter is not a repudiation because at that point there was no longer any contract for Tri–State to repudiate.

In order to find that the February 24, 2010 letter constituted a repudiation of the contract, the Court would have to adopt Lexis's argument that the alleged August 2009 agreement extended the contractual limitations period for Lexis. However, as explained above, Lexis has not only failed to allege the existence of the August 2009 agreement, but also has repeatedly disavowed its existence. Thus, that agreement cannot extend the limitations period for

Lexis. Accordingly, Lexis's count for anticipatory repudiation is barred by the contractual limitations clause, and the Court will grant Tri–State's motion to dismiss this claim.

## D. Breach of Contract

■ In its counterclaim, Lexis identifies the following breaches of contract by Tri–State: (1) failure to complete the client requirements book within seventy-five days of the agreement's effective date as required by the software schedule; (2) failure to assign competent project, insurance, business, and technical staff to review and sign-off on the client requirements book components; (3) failure to sign-off on development artifacts within fifteen business days of receiving Lexis's request; (4) failure to return and/or purge all software, documents, or proprietary information; (5) failure to devote adequate resources to the software project; (6) failure to engage in required meetings; (7) suspension of work on the project; (8) cessation of cooperation and work with Lexis on the project; and (9) failure to make substantial payments required by the agreements, including but not limited to (a) licensing fee payments, (b) payments for services rendered on a time and material basis, (c) annual maintenance fees, and (d) interest and late-fee payments.

Tri–State argues that all of these alleged breaches are barred by the one-year provision because they all occurred in 2008 or 2009. First, Tri–State argues that any claim for its alleged failure to complete the client requirements book is untimely because the book was to be completed by June 14, 2008, which is seventy-five days from the contract's effective date of March 31, 2008, and that date is obviously more than one year before Lexis brought its counterclaim on February 21, 2011. Second, Tri–State contends that according to Lexis's allegations, the eight other alleged breaches occurred on July 1, 2009, when

Hart sent Lexis the email suspending work on the project and ceasing cooperation with Lexis.

In response, Lexis contends that Tri–State's failure to provide the client requirements book within the prescribed time frame was not in and of itself an actionable breach. In support of this argument, Lexis points to § 10(a)(iii) of the software and services schedule, which provides that in the event that seventy-five days passed and additional time and resources were required to complete the client requirements book, such time and resources would be billed to Tri–State on a time and material basis. Lexis contends that because it continued to bill Tri–State for time and materials related to the client requirements book, its claim for breach of contract did not accrue until Tri–State refused to provide payment of these amounts in February 2010, when Tri–State purported to terminate the agreements. Additionally, Lexis argues that its claim for breach by failing to return materials did not arise until Tri–State purported to terminate the agreement in February 2010. As to the other breaches, Lexis simply argues that "if the Court concludes that the parties entered into an August 2009 contract" its breach of contract claim based on these breaches survives.

All of Lexis's claims for Tri–State's alleged breaches are time-barred. Lexis argues that no breach occurred regarding the client requirements book until Tri–State refused to provide payment for the time and materials Lexis used in creating the book. But even if the time and materials clause extended the date for completion of the client requirements book, as Lexis argues, this claim is still time-barred. Lexis alleges that Tri–State anticipatorily breached the agreements in July 2009. Further, Lexis avers that "[f]rom the Agreements' effective date through Tri–

State's repudiation of and withdrawal from the project LexisNexis worked diligently to create customized software for Tri–State's use in its insurance business." Thus, Lexis would have billed Tri–State for time and materials only through July 2009. At the time of Tri–State's alleged anticipatory breach in July 2009, Lexis "should have known of the occurrence giving rise" to its cause of action for breach of contract. Knowing that Tri–State had breached the agreement, Lexis also should have known of its right to damages for any unpaid monies. And, ten days after Tri–State's alleged repudiation in July 2009, Lexis should have known of its right to have its materials returned because under § 10.5 of the master agreement Tri–State was required to return or destroy Lexis's confidential information within ten days of terminating the contract.

As to the remaining alleged breaches, Lexis's argument that if the Court concludes that the parties entered into an August 2009 contract, Lexis's breach of contract claims alleging that Tri–State failed to devote adequate resources to the project, failed to engage in required meetings, ceased cooperation, and failed to make payments, is without merit. Lexis has not alleged an August 2009 agreement and therefore cannot rely on that agreement to save its claims. Instead, Lexis has alleged that Tri–State ceased all activity on the project in July 2009 and that Tri–State repeatedly rejected Lexis's offers to enter into a new agreement to re-engage on the project. Thus, Lexis's claims for breach based on Tri–State's failure to devote resources, engage in meetings, or cooperate all arose in July 2009 and are time-barred.

Further, despite its argument that its claim for Tri–State's breach of contract due to Tri–State's failure to pay invoices did not arise until Tri–State refused to provide payment in February 2010, Lexis knew of the basis for this claim in July 2009 as well. According to the master agreement, Lexis would bill Tri–State monthly for the base-software fee beginning May 1, 2008 and ending December 1, 2008. Although Tri–State alleged that the time for it to make payments to Lexis was extended by the August 2009 agreement, Lexis has not alleged that it extended the time in which Tri–State could make payments. In its reply brief in support of its motion to dismiss Tri–State's claims, Lexis states, "The contracts also required [Tri–State] to make a number of upfront payments in the form of licensing fees as additional protection to [Lexis] against the risk of [Tri–State's] failure to cooperate during the [client requirement books] phase." Thus, when Tri–State allegedly repudiated the agreement in July 2009, these amounts were already due. Lexis admits as much in its motion to limit discovery when it argues, "Without an August 2009 contract relieving [Tri–State] of its obligation to make all payments due, [Tri–State] cannot seek shelter from the contractual limitations clause," i.e., according to Lexis, Tri–State's deadline to make all payments arose before August 2009, and only a new contract could extend that deadline. Lexis, therefore, may not premise its claims for breach of contract on Tri–State's failure to make payments because that obligation arose more than a year before Lexis filed its counterclaim in February 2011.

In sum, Lexis's claim for breach of contract is time-barred by the one-year contractual provision.

### E. Breach of the Implied Covenant of Good Faith and Fair Dealing

■ Tri–State also contends that Lexis's claim for breach of the implied covenant of good faith and fair dealing is barred by the one-year limitations provi-

sion. In its counterclaim, Lexis identifies three such alleged breaches: (1) Tri–State's suspension of all work on the project in Hart's July 2009 email, (2) Tri–State's January 2010 letter alleging that Lexis had materially breached the agreements by failing to deliver the software on time, and (3) Tri–State's February 24, 2010 letter purporting to terminate the agreements. The parties offer the same arguments regarding this claim that they offered regarding Lexis's claim for anticipatory repudiation. The Court therefore reaches the same conclusion. The July 2009 email and January 2010 letter are time-barred by the one-year limitations provision, and Lexis cannot maintain a claim for breach of the implied covenant of good faith and fair dealing for the February 24, 2010 letter because it has affirmatively alleged that the contract was no longer in force as of that date.

## F. Litigation Expenses Under O.C.G.A. § 13–6–11

Tri–State moves to dismiss the fifth count of Lexis's counterclaim, which seeks litigation expenses under O.C.G.A. § 13–6–11 as a result of Tri–State's having acted in bad faith, been stubbornly litigious, and caused Lexis unnecessary trouble and expense.

### 1. Tri–State's Alleged Bad–Faith Conduct After Tri–State Filed This Suit

■ Tri–State first argues that Lexis's claim for expenses of litigation must be dismissed because such expenses cannot be recovered based upon conduct that occurred after suit was filed. The Court agrees; to the extent that Lexis's claim is based upon conduct occurring after this suit was filed, that claim must be dismissed. "The elements which will authorize an award under OCGA § 13–6–11 have consistently been found to relate to the conduct arising from the transaction un-

derlying the cause of action being litigated, not conduct during the course of the litigation itself." *David G. Brown, P.E., Inc. v. Kent,* 274 Ga. 849, 850, 561 S.E.2d 89, 90–91 (2002). Accordingly, Lexis cannot seek to recover expenses of litigation as a result of Tri–State's having allegedly asserted baseless claims because such conduct occurred during the course of this litigation rather than in connection with the transactions underlying this litigation.

### 2. Tri–State's Alleged Bad–Faith Conduct In the Transactions Underlying This Litigation

■ Lexis is not precluded, however, from seeking litigation expenses for Tri–State's alleged bad faith that occurred before this suit was filed. In its original brief in support of its motion to dismiss, Tri–State argued that Lexis's bad-faith claim was based merely upon the parties' disagreement over the transaction at issue that led to this suit. Citing *Macon–Bibb County Water & Sewerage Authority v. Tuttle,* 530 F.Supp. 1048, 1059 (M.D.Ga. 1981), Tri–State argued that merely disagreeing over the terms and enforcement of a contract does not constitute the type of bad-faith conduct that will support an award of litigation expenses.

However, in its brief in opposition to Tri–State's motion, Lexis listed three specific instances of alleged bad faith by Tri–State that involve more than merely disagreeing over the terms and enforcement of the parties' contract. According to Lexis, Tri–State (1) manufactured and invented a "material breach" as a pretext to terminate the contracts; (2) sent Lexis termination letters in January and February 2010 demanding that Lexis produce a working software project in thirty days, even though it knew that such a request was impossible to satisfy without Tri–State's cooperation; and (3) refused to re-

turn Lexis's proprietary information and software materials as required by the master agreement.

In its reply brief, Tri–State does not assert that the three grounds alleged by Lexis cannot, as a matter of law, constitute bad faith that would support an award of litigation expenses. And because the three grounds alleged by Lexis involve conduct by Tri–State that occurred as part of the transactions underlying this action, Lexis is not necessarily barred from seeking litigation expenses in connection with these three grounds.

### 3. Whether Lexis May Plead Its Expenses of Litigation Under O.C.G.A. § 13–6–11 as a Separate Count

■■ Tri–State also argues that Lexis cannot assert a cause of action for attorney's fees because O.C.G.A. § 13–6–11 does not create a separate cause of action. While it is true that O.C.G.A. § 13–6–11 "does not create an independent cause of action but merely permits in certain limited circumstances the recovery of expenses of litigation incurred as an additional element of damages," *Lamb v. Salvage Disposal of Ga.*, 244 Ga.App. 193, 196, 535 S.E.2d 258, 261 (2000), Lexis may bring a claim for litigation expenses under O.C.G.A. § 13–6–11 as long as that claim is brought in connection with a separate substantive claim for relief, *see Vogtle v. Coleman*, 259 Ga. 115, 117, 376 S.E.2d 861, 863 (1989) (O.C.G.A. § 13–6–11 available to defendant who asserts a viable claim independent of his claim for attorney's fees based on the plaintiff's alleged harassment, litigiousness and bad faith in bringing suit). The fact that Lexis has pleaded its claim for litigation expenses in a separate count (count five) from its other claims for relief (counts one through four) is irrelevant; what matters is that Lexis seeks litigation expenses related to a cause of action set forth in its other substantive counts. Thus, Lexis's ability to state a

claim under O.C.G.A. § 13–6–11 depends upon whether it has stated at least one viable substantive claim in its counterclaim.

### 4. Whether Lexis May Recover Litigation Expenses in Connection with a Claim for Non–Monetary Relief

The Court has ruled that it will dismiss Lexis's claims for anticipatory repudiation, breach of contract, and breach of the implied covenant of good faith and fair dealing; therefore, none of these claims is viable. However, Tri–State has not moved to dismiss Lexis's claim for improper retention of property (count four), and thus Lexis argues that it may premise its claim for litigation expenses upon that claim.

■ In response, Tri–State argues that Lexis cannot recover litigation expenses in conjunction with its claim for improper retention of property because a claim for attorney's fees under O.C.G.A. § 13–6–11 can be asserted only in connection with a substantive claim for money damages, whereas Lexis seeks only an injunction and specific performance rather than damages on count four. Tri–State cites *Lamb*, 244 Ga.App. at 196, 535 S.E.2d at 261, for the proposition that a party may not recover litigation expenses where it seeks relief other than damages. In *Lamb*, the court explained that O.C.G.A. § 13–6–11 "merely permits in certain limited circumstances the recovery of expenses of litigation as an additional element of damages." However, the plaintiff in *Lamb* did seek damages, so the court did not decide whether litigation expenses were recoverable in the absence of a claim for damages. Georgia law clearly authorizes the recovery of attorney's fees under O.C.G.A. § 13–6–11 in connection with claims that seek equitable, and not just legal, relief. For example in *Clayton v. Deverell*, 257 Ga. 653, 655, 362 S.E.2d 364, 366 (1987), the Georgia Su-

preme Court held that "the award of specific performance does not, as a matter of law, bar [a party] from recovering [attorney's fees under O.C.G.A. § 13–6–11]." There are myriad cases where parties have been allowed to seek litigation expenses under O.C.G.A. § 13–6–11 solely in conjunction with claims seeking non-monetary relief. *See, e.g., Jones v. Forest Lake Vill. Homeowners Ass'n, Inc.*, 304 Ga.App. 495, 498, 696 S.E.2d 453, 457 (2010) (declaratory relief and injunction); *Golden v. Frazier*, 244 Ga. 685, 687, 261 S.E.2d 703, 705–06 (1979) (specific performance); *Adams v. Cowart*, 224 Ga. 210, 215, 160 S.E.2d 805, 809 (1968) (injunction). Thus, Tri–State's argument that expenses of litigation are not recoverable unless the party seeking them is also seeking money damages is without merit.

## 5. Whether Lexis Has Asserted an "Independent Claim" Under O.C.G.A. § 13–6–11

██ Finally, Tri–State argues that none of Lexis's claims, including its claim for improper retention of property, is an independent claim because that claim is a compulsory counterclaim, and a compulsory counterclaim is not an independent claim for purposes of O.C.G.A. § 13–6–11. In response, Lexis argues that in order to recover litigation expenses under O.C.G.A. § 13–6–11, it need only assert a claim that is independent from its defense of the claims in Tri–State's complaint.

██ "Attorney's fees and expenses of litigation pursuant to O.C.G.A. § 13–6–11 are not available to a defendant in the absence of a viable independent counterclaim asserting a claim for relief independent of the assertion of the plaintiff's harassment, litigiousness and bad faith in bringing suit." *White v. Lance H. Herndon, Inc.*, 203 Ga.App. 580, 581, 417 S.E.2d 383, 385 (1992). The parties disagree as to what constitutes an "independent counter-

claim" for purposes of O.C.G.A. § 13–6–11. In light of the conflicting precedent in this area of Georgia law, the parties' disagreement is understandable. After thorough research, the Court has found no Georgia appellate court opinion defining or setting forth the test for determining whether a defendant's counterclaim is "independent."

One line of cases seems to hold that *any* claim is "independent" if it is separate from the defendant's claim for expenses of litigation. This was the unanimous, whole-court holding of the Georgia Court of Appeals in *Ballenger Corp. v. Dresco Mechanical Contractors, Inc.*, 156 Ga.App. 425, 432, 274 S.E.2d 786, 794 (1980). There, the plaintiff-contractor sued its subcontractor for breach of contract, and the subcontractor counterclaimed, asserting claims against the contractor for breach of contract for withholding payments for work performed, negligent supervision and direction and negligent inspection, recovery in quantum meruit for work performed, and expenses of litigation for bad faith. The court held that because the subcontractor had brought claims in addition to its claim for attorney's fees, i.e., the subcontractor's claim for attorney's fees was not its sole claim, it had asserted an independent counterclaim. The court noted that the "simple denomination of one party as plaintiff and another as defendant should not dictate a possible award of attorney fees" because barring defendants from seeking expenses of litigation "would endorse a 'race to the courthouse' theory of recovery." *Id.* at 431, 274 S.E.2d at 793.

The court reasoned that "[a] rigid rule preventing any defendant from recovering litigation expenses works particular inequity when a defendant [ ] is required by law to file a compulsory counterclaim or be deemed to have waived the claim altogether." *Id.* at 432, 274 S.E.2d at 793. The

court summarized its holding by stating, "We simply hold today that when a defendant asserts a claim for relief independent of a claim for litigation expenses incurred in defending against a plaintiff's case-in-chief, [O.C.G.A. § 13–6–11] does not automatically operate to bar any recovery by the defendant of litigation expenses incurred in prosecuting such an independent claim." *Id.* at 432, 274 S.E.2d at 794.

Following *Ballenger*, courts have allowed a defendant to assert a claim under O.C.G.A. § 13–6–11 where the defendant has asserted a separate cause of action in his counterclaim against the plaintiff. See, *e.g., Beall v. F.H.H. Constr., Inc.*, 193 Ga. App. 544, 546, 388 S.E.2d 342, 345 (1989) (defendant who was sued by plaintiff-construction company for alleged overpayments, slander of title, and removal of a lien on his property in connection with a building contract "was, in effect, a plaintiff in the independent counterclaim for [the construction company's] breach of contract" and thus could recover expenses of litigation under O.C.G.A. § 13–6–11); *Glenn v. Fourteen W. Realty, Inc.*, 169 Ga.App. 549, 551, 313 S.E.2d 730, 733 (1984) (in plaintiff-homebuyer's suit against realtor for fraudulent inducement, realtor's counterclaim for real estate commissions was an "independent counterclaim" and thus realtor could recover expenses of litigation); *Homac Inc. v. Fort Wayne Mortg. Co.*, 577 F.Supp. 1065, 1072 (N.D.Ga.1983) (defendant permitted to seek recovery under O.C.G.A. § 13–6–11 where it asserted counterclaim for conversion).

Conversely, following *Ballenger* the Georgia appellate courts have precluded a defendant from seeking litigation expenses under O.C.G.A. § 13–6–11 when the defendant does not assert a separate claim in addition to his claim for litigation expenses. *See, e.g., Gibson v. S. Gen. Ins. Co.*, 199 Ga.App. 776, 777, 406 S.E.2d 121,

123 (1991) ("[Defendant] having asserted no other independent claim against [plaintiff] other than a claim for litigation costs and attorney fees, is not a true plaintiff in counterclaim so as to claim litigation expenses under OCGA § 13–6–11."); *Fla. Rock Indus., Inc. v. Smith*, 163 Ga.App. 361, 363, 294 S.E.2d 553, 555 (1982) (defendant could not seek litigation expenses under O.C.G.A. § 13–6–11 because he did "not have a viable independent counterclaim asserting claims for relief independent of the assertion of the [plaintiff's] harassment, litigiousness and bad faith" because his "sole counterclaim [was] for the redress of the [plaintiff's] litigious harassment.").

Thus, based on *Ballenger*, Lexis should be able to seek litigation expenses under O.C.G.A. § 13–6–11 because it has asserted a separate claim for improper retention of its property in addition to its claim for litigation expenses based upon Tri–State's alleged bad faith.

Despite *Ballenger* and its progeny, twenty-two years after *Ballenger*, in an opinion that did not cite *Ballenger*, the Georgia Court of Appeals held that a defendant cannot recover under O.C.G.A. § 13–6–11 where the claim in connection with which he seeks to recover his expenses of litigation is a compulsory counterclaim. The case is *Sanders v. Brown*, 257 Ga.App. 566, 570, 571 S.E.2d 532, 536–37 (2002). There, the court stated that a "defendant and plaintiff-in-counterclaim cannot recover [under O.C.G.A. § 13–6–11] where there is a compulsory counterclaim." *Id.* (citing *Alcovy Props., Inc. v. MTW Inv. Co.*, 212 Ga.App. 102, 104, 441 S.E.2d 288, 290 (1994); *White*, 203 Ga.App. 580 at 581, 417 S.E.2d at 383). This, of course, represented a sea change from the rule announced in *Ballenger*, because in most cases any substantive claim that a defendant has against the plaintiff will be a

compulsory counterclaim. The *Sanders* court then asserted that "if the counterclaim is an independent claim that either arose separately from the plaintiff's claim or arose after plaintiff's claim, then a plaintiff-in-counterclaim may recover expenses of litigation." *Id.* (citing *Vogtle v. Coleman*, 259 Ga. 115, 117, 376 S.E.2d 861, 863 (1989)). *Sanders* thus seemingly defined an "independent" claim as one that is not a compulsory counterclaim under O.C.G.A. § 9–11–13(a), but arises after or separate from the plaintiff's claim.

The cases cited by the *Sanders* court do not stand for the propositions for which *Sanders* cited them. First, neither *Alcovy* nor *White* can be read to hold that a defendant cannot recover under O.C.G.A. § 13–6–11 when he asserts a compulsory counterclaim. In *Alcovy*, the plaintiff filed a complaint and notice of lis pendens seeking the cancellation of deeds conveying real property to the defendant. The defendant brought a counterclaim asserting various claims, all of which the trial court dismissed for failure to state a claim upon which relief could be granted. On appeal, the defendant argued that the trial court erred in dismissing its claim for expenses of litigation. The court found that because the trial court had dismissed all of the defendant's substantive claims, there was no claim in the counterclaim upon which the defendant could base its claim for attorney's fees: "Because [the defendant] made no showing that it asserted a viable counterclaim for relief independent of its claim of [the plaintiff's] stubborn litigiousness and bad faith, expenses of litigation pursuant to OCGA § 13–6–11 [were] not available to [the defendant]." 212 Ga.App. at 104, 441 S.E.2d at 290. Thus, the *Alcovy* court did not address whether a compulsory counterclaim constitutes an "independent" claim for purposes of O.C.G.A. § 13–6–11.

And in *White*, a computer programming and systems analysis business sued one of its independent contractors for breach of contract when the independent contractor terminated the parties' agreement and then provided services to the business's competitor in violation of that agreement. At trial, the jury ruled in favor of the plaintiff on both of its claims as well as the defendant's counterclaim. Nevertheless, the defendant argued on appeal that the trial court erroneously refused to submit to the jury the issue of defendant's attorney's fees under O.C.G.A. § 13–6–11. The court held that "since [the defendant] [did] not contend [on appeal] that his independent counterclaim [against plaintiff] was viable, it follow[ed] that the trial court correctly refused to submit to the jury the issue of his entitlement to a recovery under OCGA § 13–6–11." 203 Ga.App. at 581, 417 S.E.2d at 383. The court used the phrase "independent counterclaim" to refer to the defendant's substantive claim against the plaintiff, but nowhere in its opinion did the court identify the nature that claim. Perhaps this is because the nature of that claim was irrelevant, as the defendant had lost on that claim at trial, and without prevailing on that claim, i.e., without having a viable substantive counterclaim, the defendant had no claim to which it could attach its claim for attorney's fees under O.C.G.A. § 13–6–11.

Second, *Vogtle* (cited by *Sanders*) does not stand for the proposition that a claim must arise separately from or after the plaintiff's complaint in order to constitute an independent claim. In *Vogtle*, the Georgia Supreme Court considered when a defendant could recover attorney's fees in connection with a claim for malicious use of legal process. The court explained that under *Ballenger*, "a defendant could not counterclaim against a plaintiff for bad faith and attorney fees under O.C.G.A. § 13–6–11 merely for bringing the suit,

except as a plaintiff-in-counterclaim where the counterclaim was on an independent ground." *Id.* at 117–18, 376 S.E.2d at 863. The *Vogtle* court did not define what it meant by "an independent ground." Without reviewing *Ballenger's* holding, reasoning or progeny, the *Sanders* court inexplicably read *Vogtle* to mean that the defendant's counterclaim must arise separately from or after the plaintiff's complaint in order for the defendant to be permitted to also file a claim for attorney's fees under O.C.G.A. § 13–6–11.

Because *Ballenger* was a unanimous, whole-court opinion of the Georgia Court of Appeals, the only way it could be overturned or materially modified by that court would be by a unanimous decision of the whole court. *See* O.C.G.A. § 15–3–1 ("A decision concurred in by all the Judges shall not be overruled or materially modified except with the concurrence of all the Judges."). Thus, *Sanders*, which was decided by a three-judge panel, could not and should not have modified *Ballenger*.

Nevertheless, in *Byers v. McGuire Properties, Inc.*, 285 Ga. 530, 541, 679 S.E.2d 1, 9–10, the Georgia Supreme Court relied upon *Sanders*, explaining, "[A] plaintiff-in-counterclaim cannot recover attorney's fees under O.C.G.A. § 13–6–11 unless he asserts a counterclaim which is an independent claim that arose separately from or after the plaintiffs claim." Like the *Sanders* court, the Byers court made no mention of *Ballenger*. Applying *Sanders*, the court found that the defendant's claim for attorney's fees was not viable because his counterclaim to quiet title was not "independent" of the plaintiffs claims to cancel a security deed.

Based on *Sanders* and *Byers*, Lexis cannot seek to recover litigation expenses under O.C.G.A. § 13–6–11 because its claim for improper retention of property arises out of the same contract upon which Tri–State bases its claims. This Court is bound to follow the holding of *Byers*. *See Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir.1982) ("In determining the law of the state, federal courts must follow the decisions of the state's highest court...."). Under *Byers*, it is apparently the law in Georgia that Lexis may not seek to recover its expenses of litigation under O.C.G.A. § 13–6–11 in conjunction with its claim for improper retention of property because that claim is clearly a compulsory counterclaim. Though the Court finds this result inequitable and contrary to the well-reasoned opinion of the Georgia Court of Appeals in *Ballenger*, the Court must dismiss Lexis's claim for litigation expenses.

### III. Conclusion

Tri–State's motion to dismiss is GRANTED. The only claim remaining in Lexis's counterclaim is its claim for improper retention of property (count four). All other claims in the counterclaim are dismissed.